**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 11-75-JBC**

**HARDY OIL COMPANY, INC.,**                                             **PLAINTIFF,**

**V.**                  **<u>MEMORANDUM OPINION & ORDER</u>**

**NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY, ET AL.,**                             **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

Pending before the court are two competing motions for summary judgment: Nationwide Agribusiness Insurance Company's motion for summary judgment, R. 87, and Hardy Oil Company, Inc.'s motion for partial summary judgment, R. 88. For the following reasons, the court will grant in part and deny in part Nationwide's motion and deny Hardy Oil's motion.

Hardy Oil Company, Inc. filed this suit in response to a dispute over insurance coverage for losses it incurred for cleanup of a diesel fuel discharge on its property in Richmond, Kentucky. Hardy Oil is a family business involved in the petroleum industry, and on April 21, 2010, a failed diesel fuel line was discovered at one of its bulk plants in Richmond, Kentucky, that required extensive remedial and corrective action. Hardy Oil had purchased insurance policies through Wells Fargo Insurance-Indiana, including first- and third-party insurance coverage for its motor fuel operations from Nationwide Agribusiness Insurance Company, so it filed

a claim for coverage with Nationwide for losses sustained by the spill. Nationwide denied the claim, and Hardy Oil filed this suit based on three arguments: (1) Hardy's policy issued by Nationwide covered its damages from the spill; (2) Nationwide's denial of coverage was a breach of obligations and bad faith; and (3) if the spill is not covered by the policy issued by Nationwide, Wells Fargo negligently breached its duty to use reasonable care in providing insurance brokerage services to Hardy. Nationwide filed a counterclaim for a declaratory judgment regarding coverage of the spill.

Both Nationwide and Hardy Oil now move for summary judgment on the issue of whether Nationwide is required to pay for certain losses incurred by Hardy Oil as a result of the fuel spill. Hardy Oil claims that the court should grant it partial summary judgment and hold that Nationwide owes it $506,378.89 in damages plus prejudgment interest because the site of the spill was covered by Nationwide Policy COP 118389B. Nationwide, however, seeks a grant of summary judgment with a holding that no reasonable interpretation of the policy can be construed as providing coverage for the alleged loss. Because the court can establish only that parts of the Nationwide policy do not cover the damages in dispute, the court will grant in part and deny in part Nationwide's motion and deny Hardy Oil's motion.

Hardy Oil claims coverage under several sections of the Nationwide policy, including the Property Coverage Part, Income Coverage Part, Petroleum Property Endorsement, and Flood Endorsement. Even though no coverage exists under the Property Coverage Part or Flood Endorsement, the court cannot conclude from the

2

record that no coverage exists under the other two parts. First, no coverage exists under the Property Coverage Part because the property in dispute is not "covered property." Nationwide covers "direct physical loss to covered property at a 'covered location' caused by a covered peril." Hardy Oil argues that much of its clean-up was performed to remediate damage to structures owned by Hardy Oil, including a diked secondary-containment area, above-ground storage tanks, and associated piping. Even though "buildings and structures" are covered property under the policy, the areas of damage described by Hardy Oil – the secondary-containment area, above-ground storage tanks, and associated piping – are not "structures" under the policy.

The Nationwide policy does not define the term "structure;" therefore, the court must "determine the intention of the parties according to the language of the contract," and look no further than the "four corners of the document to determine that intent" unless an ambiguity exists. *Scottsdale Ins. Co. v.* Flowers, 513 F.3d 546, 564 (6th Cir. 2008). The term "structure" does not create an ambiguity in the Nationwide policy because its meaning within the context of the agreement is not doubtful. *Id.* at 565 (citing Black's Law Dictionary). Hardy Oil offers two dictionary definitions of "structure," including "something (as a building) that is constructed" or "something built," and "something arranged in a definite pattern of organization." *See Merriam-Webster* at http://www.merriam-webster.com/dictionary/structure; *see also The Cambridge Dictionary* at http://dictionary.cambridge.org/dictionary/american-english/structure_2. It argues

3

that the diked secondary-containment area surrounding the above-ground storage tanks, as well as the tanks and associated piping, fall within those definitions.

Even though the secondary containment area is not raw land and was "constructed" to contain fuel spills, it was not constructed "as a building." Furthermore, when construing the term "according to the entirety of [the] terms and conditions as set forth in the policy," *see Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 564 (6th Cir. 2008), the appropriate interpretation of the term "structure" is something that was built or constructed *like a building* because structures are covered as "building property" under the policy. R. 87-4, p.16.

Even if the term were ambiguous, Hardy Oil's expectation that a secondary containment dike, above-ground storage tanks, and associated piping would constitute a "structure" under the Building Property provision of covered property is not reasonable. The policy specifically states that land, retaining walls, underground pipes, drains, and paved surfaces are not covered property. These types of property are more analogous with the areas at issue than with a constructed building.

Second, summary judgment in favor of Nationwide is also appropriate for alleged damages under the Flood Endorsement because Hardy Oil has presented no evidence in support of its theory that a flood caused the damages in dispute. Hardy Oil alleges damages under the Flood Endorsement in its motion for summary judgment, but when Nationwide responds that Hardy Oil has offered no evidence in support of such theory, Hardy Oil fails to address this argument or offer any

evidence in its reply memorandum. Even though the cause of the alleged damages remains an issue of fact, Hardy Oil has not presented more than "a scintilla of evidence in support of [its] position." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Last, summary judgment is not appropriate in favor of either party on the issue of whether the Nationwide policy Income Coverage Part or Petroleum Property Endorsement covers the damages in dispute because a dispute of fact remains over what caused the fuel line leak. The Income Coverage Part does not specifically provide coverage for only "covered property" as in the Property Coverage Part. Even though it does make coverage subject to the "terms and conditions" of certain sections of the Property Coverage Part, the "Property Covered" section is not one of those sections. R. 3-1, p. 42. The Income Coverage Part provides coverage during the time period in which a business is interrupted by losses to property "as a result of a covered peril." *Id.* The Income Coverage Part adopts the Property Coverage Part section on perils covered and perils excluded. *Id.*

Nationwide excludes the perils "contamination or deterioration" and "wear and tear," unless the losses or damage was caused by a "specified peril." R. 3-1, p. 87 (Fungi or Bacteria Exclusion provision which replaces the Contamination or Deterioration portion of the Property Coverage Part at R. 87-4, p. 30); R. 87-4, p. 32. "Specified perils" include vehicles. R. 87-4, p. 15. Hardy Oil argues and provides expert testimony in support of its argument that the weight of vehicles

5

driving over the buried pipes at the property site caused the leak at issue. *See* Nicholson Report, R. 87-9, pp. 17-26.  Nationwide contests this theory and provides its own theory of causation.  Because evidence supports each party's theory of causation, a determination of whether the damages were a result of a "covered peril" is an issue of fact, and summary judgment is not appropriate.

Under similar reasoning, summary judgment is also not appropriate on the issue of whether damages are covered by the Petroleum Property Endorsement. The Pollutant Cleanup and Removal Provision under which Hardy Oil alleges coverage provides for payment of expenses "to extract 'pollutants' from land or water resulting from a discharge, dispersal, seepage, migration, release or escape of the 'pollutants' . . . if caused by 'specified perils.'"  R. 3-1, p. 99.  Whether the fuel line leak was caused by a specified peril remains an issue of fact to be decided by a jury.  Accordingly,

**IT IS ORDERED** that Nationwide Agribusiness Insurance Company's motion for summary judgment, R. 87, is **GRANTED** in part and **DENIED** in part.  The motion is granted to the extent that no coverage exists for the damages in dispute under the Property Coverage Part or the Flood Endorsement of the Nationwide policy.

**IT IS FURTHER ORDERED** that Hardy Oil Company, Inc.'s motion for partial summary judgment, R. 88, is **DENIED**.

**IT IS FURTHER ORDERED** that the undersigned **RECUSES** herself from further consideration of this case due to her imminent retirement, effective on January 9, 2013, and the scheduled pretrial conference of this case on January 10,

2013.  The Clerk shall reassign this matter by random draw.


Signed on December 14, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY