UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| HARDY OIL COMPANY, INC.<br><br>Plaintiff,<br>v.<br><br>NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, and WELLS FARGO INSURANCE-INDIANA<br><br>Defendants. | ) | Civil Case No.<br>5:11-cv-00075<br><br>**MEMORANDUM OPINION & ORDER** |

** ** ** **

By virtue of an order entered on even date herewith and in light of the settlement reached by and between Plaintiff and Defendant Nationwide Agribusiness Insurance Company ("Nationwide"), this Court denied Nationwide's Motion to Alter, Amend, or Vacate the Court's Memorandum Opinion and Order granting in part and denying in part Nationwide's summary judgment motion and denying Hardy Oil Company, Inc.'s ("Hardy Oil") summary judgment motion. (D.E. 112; 87; 88). One of the issues raised in that motion — whether Hardy Oil can claim coverage under Nationwide's Commercial General Liability policy — had been briefed but was not resolved by the Court, perhaps by an oversight, in its earlier Order. That issue remains relevant to the resolution of the claims by Plaintiff

against Defendant Wells Fargo Insurance – Indiana and should, in the Court's opinion, be dealt with in advance of any trial on the issue of coverage owed to Hardy Oil under the policies issued by Nationwide and brokered by Wells Fargo.

Upon its own motion, the Court shall require Defendant Wells Fargo to show cause why this Court should not conclude, as a matter of law, that there is no coverage owed to Hardy Oil under Nationwide's Commercial General Liability policy for the incident at bar.

**I. FACTUAL & PROCEDURAL BACKGROUND**

In the interest of brevity, the Court incorporates by reference the facts of this case as outlined in the Memorandum Opinion and Order dated December 14, 2012. (D.E. 112).

**II. STANDARD OF REVIEW**

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the factual evidence and all reasonable inferences must be construed in the light most

favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function on a summary judgment motion is not to weigh the evidence, but to decide whether there are genuine issues of material fact for trial. *Anderson,* 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Anderson*, 477 U.S. at 242. A genuine dispute exists on a material fact, and, thus, summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248*; Summers*, 368 F.3d at 885.

**III. Discussion**

In Part III of its summary judgment motion, Nationwide argued that Hardy Oil cannot claim coverage under the Commercial General Liability Coverage policy ("Liability Policy") because 1) Hardy Oil's losses were not caused by an "occurrence" as interpreted by Kentucky courts, and 2) two exclusions, namely, the "pollution" exclusion and the "damage to property" exclusion, bar coverage for Hardy Oil's loss. (D.E. 87 at 31–36). After reviewing the policy language and relevant case law, the Court agrees

that the pollution exclusion and damage to property exclusion bar Plaintiff from recovering under the Liability Policy. Therefore, it would be unnecessary to determine whether Hardy Oil's losses constitute an "occurrence."

Under Kentucky law, exclusion clauses do not grant coverage, but subtract from coverage that is already granted elsewhere in the policy. *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002) (quoting *Harrison Plumbing & Heating, Inc. v. N.H. Ins. Grp.*, 681 P.2d 875, 880 (1987)). Exclusions that are unambiguous, clearly drafted, and not unreasonable are enforceable against the insured. *Id.* at 873 (citing *Am. Nat'l Bank & Trust Co. v. Hartford Accident & Indem. Co.*, 442 F.2d 995, 999 (6th Cir. 1971)). Additionally, endorsements are amendments to insurance policies that become part of the insurance contract if attached to the policy. *Id.* at 875.

In this case, the relevant portion of the pollution exclusion, modified by two endorsements,[1] provides that:

> [t]his insurance does not apply to:
>
> [...]

[1] The two endorsements that modify the Liability Policy's pollution exclusion are 1) the "Pollution Modification Endorsement – Petroleum Products" (D.E. 87-3 at 52) and 2) the "Limited Pollution Liability Extension Endorsement - (Customer Fuel Spill)" (D.E. 87-3 at 53).

f. Pollution

(1) “Bodily Injury” or “property damage” arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of “pollutants”:

(a) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

[...]

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, “pollutants”; [...]

(D.E. 87-3 at 14–15). Additionally, in the Pollution Modification Endorsement, pollutants are defined as:

(a) Any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(b) Gasoline, diesel fuel and all other petroleum products.

(D.E. 87-3 at 52). Because Hardy Oil seeks coverage for the remediation and removal of water and soil polluted with

diesel fuel, and because Hardy Oil's cleanup was performed at the direction of a government entity, it appears to fall within the clear language of the pollution exclusion, barring coverage under the Liability Policy.

However, the Court recognizes that, under Kentucky law, pollution exclusions that "do not appear ambiguous on their face can be ambiguous in application given certain factual situations." *Certain Underwriter's at Lloyd's, London v. Abundance Coal, Inc.*, 352 S.W.3d 594, 598 (Ky. App. 2011) (citing *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 680–81 (Ky. App. 1996)). The factual situations under which the pollution exclusion has been found ambiguous in Kentucky do not, however, accord with the factual situation in the present case. For example, in *Motorists Mut. Ins. Co.*, two neighboring business owners sought damages from a dry cleaner, alleging that carbon monoxide fumes from the dry cleaner's business caused them personal injury. *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d at 679–80. Similarly, in *Certain Underwriter's at Lloyd's, London*, three individual plaintiffs sued a coal company alleging negligent trespass for coal dust that had settled onto their property. *Certain Underwriter's at Lloyd's, London*, 352 S.W.3d 594, 595–96 (Ky. App. 2011). Both of these defendants' insurers tried to escape

liability under the pollution exclusion of their insurance policies. *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d at 680; *Certain Underwriter's at Lloyd's, London*, 352 S.W.3d at 596. However, both courts pointed out that the historical use and understanding of the pollution exclusion related to environmental pollution on a catastrophic level, which made the clause as applied to these accidental, small-scale scenarios ambiguous. *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d at 680; *Certain Underwriter's at Lloyd's, London*, 352 S.W.3d at 598.

In contrast to these cases, Hardy Oil's claim involves a classic environmental catastrophe that led to a government-ordered cleanup. As Kentucky courts have recognized, these are exactly the type of situations that the pollution exclusion historically sought to exclude from coverage. *Certain Underwriter's at Lloyd's, London*, 352 S.W.3d at 598. Therefore, the pollution exclusion is not ambiguous as applied to the factual circumstances of this case, and Hardy Oil cannot claim coverage under the Liability Policy.

Even if the pollution exclusion were not at issue, Hardy Oil still would not be able to claim coverage under the Liability Policy because the damage to property

exclusion also precludes coverage. The damage to property exclusion provides that:

> [t]his insurance does not apply to:
>
> [...]
>
> "Property damage" to:
>
> (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; [...]

(D.E. 87-3 at 16). This language clearly excludes Hardy Oil's fuel discharge cleanup, which constitutes damage to its own property, from coverage.

Quite simply, Nationwide's Liability Policy was not designed to compensate Hardy Oil for the type of damage it incurred, as the Property Insurance Policy purchased by Hardy Oil was meant to fill this role subject to its terms and exclusions.

**IV. Conclusion**

For the reasons stated above, **IT IS ORDERED** that Defendant Wells Fargo Insurance-Indiana shall **SHOW CAUSE** within **ten (10) days** of entry of this order why this Court should not conclude, as a matter of law, that there is no

coverage for Hardy Oil under Nationwide's Commercial General Liability policy for the incident at bar.

This the 11th day of January, 2013.




**Signed By:**

***Joseph M. Hood*** JMH

**Senior U.S. District Judge**