UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| HARDY OIL COMPANY, INC. ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Case No. |
| ) | 5:11-cv-00075 |
| NATIONWIDE AGRIBUSINESS ) | |
| INSURANCE COMPANY, and WELLS ) | **MEMORANDUM OPINION & ORDER** |
| FARGO INSURANCE-INDIANA ) | |
| ) | |
| Defendants. ) | |

\*\*\*

This matter is before the Court upon Defendant Wells Fargo Insurance-Indiana's ("Wells Fargo") Motion for Summary Judgment [DE 157]. Plaintiff Hardy Oil Company, Inc. ("Hardy Oil") has filed a Response [DE 169], stating its objections, and Wells Fargo has filed a Reply [DE 178] in further support of its Motion. This Motion for Summary Judgment is ripe for adjudication and, for the reasons stated below, shall be granted.

**I. BACKGROUND**

At all relevant times, Hardy Oil owned a petroleum bulk plant storage facility at 120 Quality Drive in Richmond, Kentucky ("Bulk Plant"). The Bulk Plant contained five aboveground storage tanks that stored petroleum-based fuel for wholesale with on-site dispensing by transfer of the fuel from the tanks to a load-out-rack

via connecting fuel pipes that were located partially above ground and partially underground. The exact date of construction of the Bulk Plant is not known, however, it was designed in the summer of 1979 and is believed to have been constructed at about the same time. The underground portion of the fuel pipes are covered by a driveway that is partially graveled, but that driveway is paved with concrete in the area of the load-out-rack. During the time of the incident in question, described below, the Bulk Plant was leased to and operated by Richmond Petroleum, Inc., under a Commissioned Agent Agreement with Hardy Oil.

Hardy Oil maintained insurance for the Bulk Plant in the relevant policy year, 2010, in the form of a property policy and a liability policy. The policy was written by Nationwide Agribusiness Insurance Company ("Nationwide") and was obtained for Hardy Oil by Wells Fargo through its agent, Rollie Lehnus.[1] When Hardy Oil sought coverage, its

---

[1] Hardy Oil had a relationship with Lehnus dating back to the mid-1980s, when Hardy Oil obtained insurance for the Bulk Plant through Lehnus, who was then an independent broker, for a couple of years. Hardy Oil then began obtaining its insurance through another broker whose pricing was more competitive. However, for the policy years of 2005 to 2007 and 2009 to 2012, Hardy Oil again used the services of Lehnus, who was by that time with Wells Fargo, to obtain insurance coverage for the Bulk Plant. The Court finds it interesting that there is no evidence presented that the other brokers or agents, who worked with Hardy Oil from the later 1980s until its

sole owner and president, Butch Hardy, asked Lehnus if there was further protection he would recommend for Hardy Oil. Hardy Oil did not specifically ask Lehnus to procure pollution liability insurance for the aboveground storage tanks at the Bulk Plant.[2] While it appears that the parties did not discuss it specifically, Lehnus did not recommend that Hardy Oil obtain additional pollution liability coverage for the aboveground storage tanks because: (1) such insurance can be expensive, (2) the inspections and testing necessary to qualify for such insurance can be expensive, (3) if the inspection or testing reveals a leak or environmental issue, then the state must be notified and an insured can incur substantial costs in rectifying the issue, and, (4) in over 30-years as an insurance broker specializing in the petroleum insurance industry, Lehnus has never had a client request pollution insurance for aboveground storage tanks.

---

resumption of its relationship with Lehnus in 2005, suggested that Hardy Oil obtain the coverage which it now faults Lehnus and Wells Fargo for failing to recommend. An inquiring mind would ask, "Why not?" The Court need not reach this issue to resolve the matter before it.

[2] It is unclear from the facts before this Court how familiar Lehnus was with the Bulk Plant facility, but the Court assumes for the purposes of analyzing this Motion that he was sufficiently familiar with it to understand the potential hazards which might arise from the storage tanks and the pipes associated with them.

Then, on April 21, 2010, Hardy Oil was notified of a petroleum leak, emanating from the underground portion of one of the fuel transfer pipes at the Bulk Plant. There is substantial dispute over the cause of the leak, whether it was due to corrosion or a stress fracture due to the compression of the soil over the pipes from the load of the trucks passing over the graveled and concrete-slabbed driveway. The reason is not material to the Court's inquiry today. All that matters is that a quantity of diesel fuel was discharged into the underground environment from an unintended opening in one of the pipes. That fuel eventually reached the surface of the ground and subsequently impacted the surface water, and Hardy Oil suffered losses as a result.

Hardy Oil sought to recover those losses from Nationwide, under the property and liability policies brokered by Wells Fargo's agent, Lehnus. Ultimately, Hardy Oil filed suit in this Court seeking damages from Nationwide for breach of contract.[3] Hardy Oil also averred

---

[3] During the course of this litigation, this Court has ruled that there was no coverage under certain provisions of the Nationwide property policy and no coverage under the Nationwide liability policy. Hardy Oil and Nationwide entered into a settlement of that dispute without further resort to litigation before this Court, and the Court has not yet decided whether there was coverage for the leak under the Income Coverage Part or the Petroleum Property

that Wells Fargo is liable for its losses on the grounds that Wells Fargo's agent, Lehnus, was negligent when he failed to recommend and broker pollution liability coverage for the aboveground storage tanks at the Bulk Plant. As Hardy Oil explains it, pollution liability coverage is designed to cover the type of release which occurred at the Bulk Plant and would provide coverage for the costs of onsite cleanup, offsite cleanup, third-party bodily injury, and property damage, as well as any resulting business interruption.[4] Whether Wells Fargo, through Lehnus, should have recommended that coverage and whether Hardy Oil was injured as a result of any failure to recommend that coverage are the questions before the Court today.

In this regard, Hardy Oil's opinion witness, Howard Tollin, has opined that all insurance brokers should recommend a pollution liability policy for companies that own or operate a fuel storage facility, store fuel in

---

Endorsement of the property policy. The Court concludes that it need not reach a decision on that issue to make its ruling today.

[4] While Wells Fargo disputes this fact, the Court construes the facts (or legal conclusions masquerading as facts, as the case may be) in the light most favorable to the non-movant Hardy Oil for the purposes of deciding this Motion for Summary Judgment. Thus, the Court assumes that a pollution liability policy, as described, would encompass the loss suffered at the Bulk Plant. Of course, since the Court need not do so, the Court makes no actual determination that such a policy would provide coverage.

aboveground or underground storage tanks or deliver fuel and that there are at least twenty-five insurers who could provide pollution liability coverage.

Wells Fargo's opinion witness, Reynolds Renshaw, has affied, however, that the Bulk Plant would not have qualified for pollution liability coverage for its aboveground petroleum storage tanks due to (1) the facility's age; (2) the antiquated equipment/lack of documentation of any upgrade to the equipment at the Bulk Plant; (3) the absence of leak detection systems; (4) the absence of evidence of tank tightness testing/vessel integrity confirmation; (5) the absence any evidence of environmental media sampling; and (6) the absence of any known site review/investigation (Phase I/Phase II) reports.

## II. STANDARD OF REVIEW

The Court may grant a motion for summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must bear the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). That burden satisfied, the non-moving party must then

produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The Court must review the evidence in the light most favorable to the non-moving party; however, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Thus, the non-moving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

The United States District Court for the Western District of Kentucky recently summarized the Kentucky law of negligence, as it applies to insurance brokers or agents and their clients as follows:

> To succeed on a claim of negligence, the plaintiff must establish that (1) the defendant owed a duty of care to

> the plaintiff, (2) the defendant
> breached its duty, and (3) the breach
> proximately caused the plaintiff's
> damages. *Mullins v. Commonwealth Life
> Insur. Co.,* 839 S.W.2d 245 (Ky. 1992).
> The Supreme Court of Kentucky has held
> that, in general, insurance brokers and
> agents owe only a standard duty of
> reasonable care to their clients. *See
> Associated Ins. Serv[.], Inc. v.
> Garcia,* 307 S.W.3d 58, 63 (Ky. 2010).
> However, "an insurer may assume a duty
> to advise an insured when: (1) he
> expressly undertakes to advise the
> insured; or (2) he impliedly undertakes
> to advise the insured." *Mullins,* 839
> S.W.2d at 248; *see also Dotson v.
> Grange Mut. Cas. Co.,* [No. 2009-CA-000482-MR,] 2010 WL 1133337 (Ky. Ct.
> App. Mar. 26, 2010). "An implied
> assumption of duty may be present when:
> (1) the insured pays the insurance
> agent consideration beyond a mere
> payment of the premium; (2) there is a
> course of dealing over an extended
> period of time which would put an
> objectively reasonable insurance agent
> on notice that his [advice] is being
> sought and relied on; or (3) the
> insured clearly makes a request for
> advice." *Mullins,* 839 S.W.2d at 248.

*Helton v. American General Life Ins. Co.*, Civil Action No. 4:09-cv-0018-JHM, 2013 WL 2242773, *12 (W.D.Ky. May 21, 2013); *see also St. Paul Fire & Marine Ins. Co. v. CEI Florida, Inc.*, 864 F. Supp. 656, 673 (E.D. Mich. 1994) ("where a special relationship exists with the insured, an agent has the duty to advise the insured").

Here, the Court assumes, as Hardy Oil contends, that "there [was] a course of dealing over an extended period of

8

time which would put an objectively reasonable insurance agent on notice that his [advice was] being sought and relied on" with the respect to obtaining adequate coverage for Hardy Oil's business interests, specifically pollution liability coverage for the aboveground storage tanks at the Bulk Plant.[5] The Court also assumes for the purposes of summary judgment that Wells Fargo, through Lehnus, had and breached a duty to advise Hardy Oil that coverage alternatives, such as pollution liability coverage, would be necessary to fill gaps in the property and liability insurance obtained and to guard against losses at its Bulk Plant.

The Court agrees with Wells Fargo, however, that Hardy Oil still could not recover – even with all of these assumptions – because there is no evidence in the record that the Bulk Plant would have qualified for pollution liability coverage. Tollin opines only that "more than 25

---

[5] Whether that special relationship existed between Lehnus/Wells Fargo and Hardy Oil is a question of fact. However, the Court is willing to accept that such a relationship existed for the purposes of summary judgment in this case. Looking at the facts in the light most favorable to non-movant Hardy Oil, the Court sees an agent who worked with Hardy Oil on and off for more than twenty years – and more often on than off in the eight years prior to the time period in question. Further, Lehnus has testified to his familiarity with the insurance options available to those in the petroleum industry based on his more than thirty years of experience in the petroleum insurance industry.

insurers could have provided pollution liability coverage which would have covered the loss." [DE 169-2 at 4; Page ID # 4209.] It is clear from the context in which this statement was made that Tollin speaks only to the fact that this type of coverage is underwritten by a subset of insurers who serve as environmental insurers — not to the ability of Hardy Oil to qualify for this coverage. By contrast, Renshaw has opined that the Bulk Plant would not have qualified for the pollution liability coverage of which Tollin speaks due to the age of the facility, the antiquated equipment and lack of documentation of upgrade, the absence of leak detection systems, the absence of evidence of tank tightness testing/vessel integrity confirmation, the absence of any evidence of environmental media sampling, and the lack of any known site review or investigation reports.

Thus, it is undisputed that, even if Wells Fargo, by and through its agent, had a duty to advise Hardy Oil about the existence of pollution liability coverage and had provided that advice, Hardy Oil would not have qualified for and obtained that coverage due to the state in which its facilities were maintained. Looking at the facts in the light most favorable to non-movant Hardy Oil, a jury could conclude that there was an implied assumption of the

duty of care and even that the facts demonstrated that it was breached.  They could not, however, conclude the breach was the proximate cause of Hardy Oil's injury — lack of coverage in the face of loss — since Hardy Oil could not have obtained the coverage had it been recommended.

Thus, considering the material facts about which there is no genuine dispute and which are before this Court, summary judgment is appropriate.  Wells Fargo's Motion shall be granted, and Hardy Oil's claim of negligence on the part of Wells Fargo shall be dismissed.

Accordingly, **IT IS ORDERED** that Wells Fargo's Motion for Summary Judgment is **GRANTED**.

This the 8th day of October, 2013.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

11